**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>MARK RAIMUNDO WATSON,<br><br>        Debtor.<br>_____<br><br>MARK RAIMUNDO WATSON,<br><br>        Appellant,<br><br>v.<br><br>DITECH FINANCIAL LLC,<br><br>        Appellee.<br>_____ | BAP No.   HI-17-1012-TaLB<br><br>Bk. No.   15-01228<br><br><br><br><br><br>**MEMORANDUM**[*] |

Submitted Without Argument
on October 26, 2017

Filed – November 9, 2017

Appeal from the United States Bankruptcy Court
for the District of Hawaii (Honolulu)

Honorable Robert J. Faris, Bankruptcy Judge, Presiding

Appearances:    William H. Gilardy, Jr. for on brief for appellant Mark Raimundo Watson; Derek W.C. Wong of TMLF Hawaii, LLLC and Renee M. Parker of The Mortgage Law Firm, PLC for appellee Ditech Financial LLC.

Before:   TAYLOR, LAFFERTY, and BRAND, Bankruptcy Judges.

---

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

Chapter 13[1] debtor Mark Watson ("Debtor") appeals from the bankruptcy court's order granting Ditech Financial, LLC ("Ditech") relief from the automatic stay to enforce its lien against his property. Debtor argues that his confirmed chapter 13 plan was res judicata as to Ditech's lien rights and precluded foreclosure. We disagree. And Debtor's failure to make postpetition and postconfirmation payments was cause for stay relief. Accordingly, we AFFIRM.

**FACTS**

Debtor received a chapter 7 discharge on October 15, 2015. Although ineligible for another discharge, he filed a chapter 13 petition that same day. His chapter 13 schedules, filed four days later, reflect an ownership interest in real property in Waikoloa, Hawaii (the "Property"). He scheduled no secured creditors.

On April 25, 2016, the bankruptcy court entered an order confirming Debtor's chapter 13 plan.[2] Debtor's confirmed chapter 13 plan is consistent with his schedules. It provides for 36 months of $622.05 payments, resulting in an estimated 100% distribution to unsecured claims. It neither provides for nor lists secured creditors.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

2

As it turns out, the schedules and plan provided a woefully incomplete picture of Debtor's state of affairs.

About seven months later, Ditech moved for relief from the automatic stay to foreclose on the Property under §§ 362(d)(1) and 1301(c). It asserted a secured interest in the Property based on a note and mortgage executed by Debtor and his spouse in July 2005. And it alleged that the note was in default because Debtor had failed to make 11 postpetition installment payments, totaling $27,668.19.

As it turns out, even given the additional factual assertions of the stay relief motion, the picture remained incomplete. Significant foreclosure activity preceded the stay relief motion.

Debtor opposed the stay relief motion. He argued: first, that his in personam liability was discharged in his chapter 7 case; second, that the in rem debt was not valid because a judicial foreclosure suit had been dismissed with prejudice; third, that Ditech has not provided evidence that it was a creditor; and fourth, that he was not in payment default under his confirmed chapter 13 plan.

When Ditech replied, it asserted that it was the holder of the note, indorsed in blank, and stated that it would produce the note at the hearing. And it explained that the state court dismissal with prejudice was vacated with the Debtor's consent.

Apparently, in April 2013, Ditech's predecessor in interest filed a judicial foreclosure proceeding. And no one disputes that, at some point, the proceeding was dismissed with prejudice and that later the dismissal was vacated, allegedly with

3

Debtor's consent. As the bankruptcy court puzzled out and ultimately determined at the hearing, the vacature did not violate the automatic stay because Ditech's predecessor in interest had received relief from the automatic stay. Debtor does not dispute this point.

The matter came on for hearing. Neither Debtor nor his counsel appeared. The bankruptcy judge, nevertheless, addressed Debtor's objections. Based on Ditech's counsel's representation that he had the original note with him and Debtor's counsel's non-appearance to examine it, the bankruptcy judge concluded that Ditech had standing. He found that Debtor's previous chapter 7 discharge had no effect on Ditech's lien rights. He noted that the state court set aside the dismissal. As for the chapter 13 plan, the bankruptcy judge explained:

> The plan just says who the Debtor wants to pay. The Debtor can't not pay a Creditor with a lien and retain a secured property. So that the plan simply doesn't have the effect that the Debtor says it has of being an adjudication that the Creditor has no lien rights.

Hr'g Tr. (Jan 10. 2017) 4:15-19. With that, the bankruptcy judge concluded: "So, for all those reasons, I think the objection is borderline frivolous, and I will overrule it and grant the motion." Id. at 5:3-5.

The bankruptcy court later entered an order granting relief from the automatic and codebtor stays.

Debtor timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

4

**ISSUE**

Did the bankruptcy court err in granting Ditech relief from the automatic stay?

**STANDARD OF REVIEW**

We review for an abuse of discretion the bankruptcy court's decision to grant relief from the automatic stay. Moldo v. Matsco, Inc. (In re Cybernetic Servs., Inc.), 252 F.3d 1039, 1045 (9th Cir. 2001); Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1084 n.9 (9th Cir. 2000) (en banc). We "review de novo contentions that present an issue of law regarding stay relief." Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009) (citing Mataya v. Kissinger (In re Kissinger), 72 F.3d 107, 108 (9th Cir. 1995)).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

**DISCUSSION**

We start with context. Debtor is what is "colloquially known as [a] 'Chapter 20' debtor[]." HSBC Bank USA, N.A. v. Blendheim (In re Blendheim), 803 F.3d 477, 480 (9th Cir. 2015). Before filing his present chapter 13 proceeding, he filed for and received a chapter 7 discharge.

But, as the bankruptcy court explained, Debtors' chapter 7

5

discharge has no effect on Ditech's lien rights or right to foreclose on the property. "Absent some action by the representative of the bankruptcy estate, liens ordinarily pass through bankruptcy unaffected . . . ." Brawders v. Cnty. of Ventura (In re Brawders), 503 F.3d 856, 867 (9th Cir. 2007); see Schlegel v. Billingslea (In re Schlegel), 526 B.R. 333, 342 (9th Cir. BAP 2015). True, Debtor received a discharge of his personal liability for the debt, but Ditech's liens remained in full force, and Ditech retained the right to recover its claims from the collateral. See Johnson v. Home State Bank, 501 U.S. 78, 80 (1991) (holding that a mortgage lien, after a chapter 7 proceeding has discharged a debtor's personal obligation on the underlying debt, remains a "claim against the debtor that can be rescheduled under Chapter 13"). As such, secured creditors such as Ditech "may choose not to participate in the bankruptcy case and look to their liens for satisfaction of the debt." In re Schlegel, 526 B.R. at 342.

**The bankruptcy court did not abuse its discretion in granting relief from the automatic stay**. Under § 362(d), the bankruptcy court must grant relief from the automatic stay "for cause, including the lack of adequate protection . . . ." 11 U.S.C. § 362(d)(1). "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." Mac Donald v. Mac Donald (In re Mac Donald), 755 F.2d 715, 717 (9th Cir. 1985); In re Kronemyer, 405 B.R. at 921. In Ellis v. Ellis (In re Ellis), 60 B.R. 432 (9th Cir. BAP 1985), we held, in a virtually identical situation, that "[f]ailure to make post-

6

confirmation payments can constitute cause for lifting the stay." Id. at 435.

Here, Watson failed to make 5 postconfirmation payments (and 11 postpetition payments). And the bankruptcy court concluded that this was cause to grant stay relief. As in In re Ellis, and on the record before us, we see no error in the bankruptcy judge's determination that cause existed for terminating the automatic stay.

**Debtor's confirmed chapter 13 plan does not suggest a different result**. Debtor makes much of the fact that he has confirmed a chapter 13 plan. Debtor argues that stay relief was inappropriate because Ditech failed to object to his chapter 13 plan, which was confirmed, final under § 1327, and thus res judicata as to all issues that could have been raised. We disagree; we rejected this argument in Ellis. 60 B.R. at 434 ("Post-confirmation defaults would not be considered at the confirmation hearing and are therefore not subject to res judicata flowing from the order.").

Debtor's confirmed chapter 13 plan (i.e., Hawaii's form chapter 13 plan) does not address the present situation: a secured creditor not provided for in the plan. Debtor's plan provides for the following potential classes of secured creditors:

- "Class 1 consists of secured claims where (a) Debtor was in default on the petition date and (b) the claimant's rights are not modified by the plan, except for the curing of the default."

- "Class 2 consists of secured claims where the rights of the

7

holder of a secured claim are modified by the plan under 11 U.S.C. § 1322(b)(2) or (c)(2)."

- "Class 3 consists of secured claims that are satisfied by surrender of collateral."
- "Class 4 consists of secured claims where (a) Debtor was not in default on the petition date and (b) the rights of the holder are not modified by this plan."[3]

In filling out the plan, Debtor stated that there were no creditors falling into any of these classes. Debtor thus did not provide for Ditech's interest in the plan.[4]

The plan does provide that "[e]xcept to the extent necessary to fund this plan, property of the estate shall revest in Debtor upon entry of the confirmation order." This language, combined with § 1327, underscores that Ditech's interest

---

[3] The national official form chapter 13 plan is similar. It provides for the following classes of secured claims, but does not address what happens when a secured creditor is not treated under the plan:

- Section 1322(b)(5) treatment: "Maintenance of payments and cure of default, if any."
- Bifurcation under § 506(a): "Request for valuation of security, payment of fully secured claims, and modification of undersecured claims."
- Section 1325(a)(5)'s "hanging paragraph": "Secured claims excluded from 11 U.S.C. § 506."
- Section 522(f): "Lien avoidance."
- "Surrender of collateral."

[4] The bankruptcy court granted Ditech relief from the § 1301 codebtor stay. This was unquestionably correct under § 1301(c), which provides that the bankruptcy court shall grant relief from the codebtor stay to the extent that "the plan filed by the debtor proposes not to pay such claim . . . ." 11 U.S.C. § 1301(c)(2).

8

survives. Section 1327(c) states that, except as otherwise provided for in the plan or confirmation order, "the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor **provided for** by the plan." 11 U.S.C. § 1327(c) (emphasis added). To the extent the property revested in Debtor, it remained encumbered by Ditech's lien.

Debtor also contends that Ditech's claim was not provided for in the plan because it had been assigned to a different party. Because the plan does not otherwise provide for the alleged assignee, we consider this as a renewal of Debtor's standing argument. In the stay relief context, a party "seeking stay relief need only establish that it has a colorable claim to the property at issue." Arkison v. Griffin (In re Griffin), 719 F.3d 1126, 1128 (9th Cir. 2013). The bankruptcy court addressed Debtor's concerns at the hearing. And Debtor does not argue on appeal that the bankruptcy court's reasoning was in error. Nor do we see any error: the bankruptcy court accepted the uncontested representation from Ditech's counsel that his client held the original note indorsed in blank. Debtor's counsel had an opportunity to inspect that note, but lost the opportunity when he failed to appear at the stay relief hearing. We determine that the bankruptcy court did not err in concluding that Ditech had standing to seek stay relief.

Debtor also argues that Ditech's foreclosure action had been dismissed, with prejudice, by the Hawaii state court. The bankruptcy court, however, addressed this; it explained that the dismissal was vacated and that the vacature was not void as an

9

act in violation of the automatic stay. Debtor does not argue that the bankruptcy court erred in so determining. Thus, for purposes of the stay relief issues the facts of the judicial foreclosure action do not evidence error.

Debtor next contends that the bankruptcy court erred because he had missed no plan payments. But that is immaterial. As Debtor concedes, Debtor's confirmed chapter 13 plan does not provide for payment to Ditech. As discussed above, Ditech, as a secured creditor, could look to its lien rights for satisfaction of its debt; and Ditech requested stay relief to pursue those rights because it was not receiving payment either under or outside the plan.

Finally, Debtor argues that there was no postpetition debt because the debt had been accelerated prepetition. Although true, we do not find this argument persuasive. The relevant question is whether there was cause to grant stay relief. As we explained above, Debtor used chapter 7 to discharge his personal liability on the note; accordingly, Ditech could not seek a deficiency judgment and could look only to the Property for satisfaction of the debt. And Debtor (and his spouse) opted to remain in possession of the Property; this possessory interest in the Property was protected by the automatic stay. Presumably, so long as payments on the Property were being made on its in rem rights, Ditech would not proceed with foreclosure. But payments were not made, and Debtor did not propose to restructure his relationship with Ditech in his chapter 13 plan. Accordingly, it is not a question of whether the debt Debtor owed was pre- or postpetition (that debt was discharged); rather

10

the analysis centers on whether Ditech could enforce its <u>in rem</u> right to receive monthly payments on the Property. Ditech was not receiving those payments; this was cause to grant stay relief as to Debtor's possessory interest in the Property.

## CONCLUSION

Based on the foregoing, we AFFIRM.

11